ACQUISITION OF HISTORICAL BUILDINGS The Cherokee County Board of County Commissioners has no authority to sell county-owned buildings to the Oklahoma Historical Society without first accepting bids from the public under the procedure described in 19 O.S. 342 [19-342] — 19 O.S. 344 [19-344] (1971). However, the Cherokee County Board of County Commissioners may enter into a contract with the Oklahoma Historical Society to lease the county-owned historic structures in question. The Cherokee County Board of County Commissioners may not place any monies received from the Oklahoma Historical Society for the lease of the historic structures in question into any type of interest bearing escrow or special purpose fund for the sole purpose of applying such funds toward construction of replacement facilities for the county government in the future. Any monies received from such a lease agreement would be subject to appropriation by the county excise board. The Attorney General is in receipt of your letter wherein you asked the following questions: 1. Can the State of Oklahoma, acting through the Oklahoma Historical Society, acquire possession of the (various buildings in Tahlequah owned by Cherokee County) historic structures and sites by outright negotiated purchase, by long-term lease, or by other means, without the Cherokee County Board of County Commissioners offering such properties for public sale to the highest bidder? 2. Can the Cherokee County Board of County Commissioners place any monies received from the State of Oklahoma and/or other public or private agencies for the sale or long-term lease of these historic structures and sites, into any type of interest bearing escrow or special purpose sinking fund or trust authority established for the sole purpose of applying such funds toward construction of replacement facilities for the County government in the future? The power of the counties to convey interests in real property which they own is provided by the provisions of 19 O.S. 1 [19-1] (1971) as follows: "2. To purchase and hold real and personal estate for the use of the county, and lands sold for taxes as provided by law. "3. To sell and convey any real or personal estate owned by the county, and make such order respecting the same as may be deemed conducive to the interests of the inhabitants." In addition, 19 O.S. 339 [19-339] (1971) vests in the board of county commissioners the authority to convey real property owned by the county and provides in part as follows: "First. To make all orders respecting the property of the county, to sell the public grounds of the county and to purchase other grounds in lieu thereof; and for the purpose of carrying out the provisions of this section it shall be sufficient to convey all the interests of the county in such grounds when an order made for the sale and a deed is executed in the name of the county by the chairman of the board of commissioners, reciting the order, and signed and acknowledged by him for and on behalf of the county." The procedure to be followed by the board of county commissioners in making a sale of county-owned real property is set forth in the provisions of 19 O.S. 342 [19-342], 19 O.S. 343 [19-343], 19 O.S. 344 [19-344] (1971). To summarize, the commissioners must adopt a resolution declaring that the real estate is not needed for courthouse or jail purposes, publish the resolution with proceedings of the board for appraisement, give notice of sale, take bids, and award the sale to the highest and best bidder. Section 344 also stipulates that the property shall not be sold for less than 80% of its appraised value. It has long been the rule in the State of Oklahoma that the powers of the county commissioners are to be strictly construed. As the Court stated in Allen vs. Board of Commissioners of Pittsburg County, 28 Okl. 773, 116 P. 175: "Boards of County Commissioners must be strictly construed because when acting under special authority they must act strictly on the conditions under which the authority is given." See also Lairmore vs. Board of Commissioners of Okmulgee County, 200 Okl. 436, 195 P.2d 762, Spann vs. Cresswell,198 Okl. 151, 176 P.2d 803. The Attorney General has held in Attorney General's Opinions 68-119, 71-209, and 73-271 that the procedure prescribed in 19 O.S. 342-344 [19-342-344] must be explicitly followed in any sale of county-owned real property by the board of county commissioners. Based upon the foregoing authorities, it is clear that the Cherokee County Board of County Commissioners has no authority to sell county-owned buildings to the Oklahoma Historical Society without first accepting bids from the public under the procedure described in 19 O.S. 342-344 [19-342-344]. The second part of your first question asked whether the Oklahoma Historical Society could acquire possession of county-owned historic structures by means of a long-term lease between the society and the county board of commissioners. With regard to this portion of your question, 19 O.S. 338 [19-338] (1971), provides as follows: "The board of county commissioners is hereby authorized and empowered to enter into contracts with the authorities of the United States of America, the State of Oklahoma, and any incorporated city or town within the boundary of the county entering into such contract, leasing and letting to the United States of America, the State of Oklahoma, or to any incorporated city or town situated within the boundaries of the county making such contract, or contracts, any county building, or buildings, or lands, belonging to the county, for airports or public uses; and such contract, or contracts, when entered into by the board of county commissioners of any county, with the Governor of the State of Oklahoma, or with the proper authorities of the United States of America, or the proper authorities of any incorporated city or town located within the boundary of the county entering into such contract, shall be valid obligations. Contracts of like character heretofore entered into, by and between any authorities hereinbefore mentioned, are in all things hereby ratified, confirmed and legalized." Section 19 O.S. 338 [19-338], quoted above, provides in clear and unambiguous language that the board of county commissioners may enter into a contract with the State of Oklahoma to lease county-owned buildings to the state for "public purposes." This section has been accordingly construed in Attorney General's Opinion 64-319 and an opinion dated August 14, 1959 to the Oklahoma Planning and Resources Board. In the latter opinion, the County Board of Commissioners of Roger Mills County wanted to lease a part of the courthouse square in Cheyenne to the Planning and Resources Board in order to develop the same as a public museum. The Attorney General held that such a lease agreement was proper. Your second question asks whether the Cherokee County Board of County Commissioners could place any monies received from the State of Oklahoma for the lease of county buildings into any type of interest bearing escrow fund for the sole purpose of applying such funds toward construction of replacement facilities for the county government. In responding to this question, it should first be noted that the county excise board, not the board of county commissioners, has the authority to appropriate all monies received by the county. See 68 O.S. 2487 [68-2487] (1971) and Attorney General Opinion dated August 26, 1949, to the Honorable Lynn W. Norman. Keeping this rule in mind, we direct your attention to 62 O.S. 335 [62-335] (1971), which controls the disposition of funds received by the county from release of county-owned property: "When any money is due any county, city, town or school district in this State from sale, lease or rental of any public property, or royalty, or for compensation for service of public employees or other purpose, it shall be paid over to the lawful treasurer thereof. "The governing board shall have authority to direct by written resolution duly entered in the minutes of its meeting at the time such money is received or prior thereto that such money shall be credited to the fund account from which such property was derived or from which payment has been or will be made for such services rendered or other purposes. "If there be no resolution by the governing board directing the disposition of the money received as contemplated herein it shall be the duty of the treasurer to credit such money so received to the general fund . . ." Pursuant to the above statute, it is apparent that the board of county commissioners has the authority to direct that the proceeds from a lease agreement be placed in the fund account from which such property was derived or from which payment has been or will be made for such services, providing such fund exists. Otherwise, the proceeds from the lease agreement are credited to the general fund. However, regardless of whether the circumstances in the instant case would permit the board of commissioners to place the monies received from the lease of the county buildings into a special fund upon receipt thereof, the monies would still be subject to the county excise board's appropriation at a later date. The proceeds could not be left to accumulate without a yearly appropriation to that effect by the county excise board. It is, therefore, the opinion of the Attorney General that your questions should be answered as follows. The Cherokee County Board of County Commissioners has no authority to sell county-owned buildings to the Oklahoma Historical Society without first accepting bids from the public under the procedure described in 19 O.S. 342-344 [19-342-344] (1971). However, the Cherokee County Board of County Commissioners may enter into a contract with the Oklahoma Historical Society to lease the county-owned historic structures in question. With regard to your second question, it is the opinion of the Attorney General that the Cherokee County Board of County Commissioners may not place any monies received from the Oklahoma Historical Society for the lease of the historic structures in question into any type of interest bearing escrow or special purpose fund for the sole purpose of applying such funds toward construction of replacement facilities for the county government in the future. Any monies received from such a lease agreement would be subject to appropriation by the county excise board. (Marvin C. Emerson)